UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS ARIEL GARCIA, | Case No. 1:23-cv-00567-EPG |
| Plaintiff, | FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 1, 18). |
| Defendant. | |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability and supplemental security income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 10).

Plaintiff argues as follows:

1. The MRFC is not supported by substantial evidence of record.

2. The ALJ failed to provide "clear and convincing" reasons to reject Ms. Garcia's psychiatric symptomology.

(ECF No. 18, p. 5) (footnote omitted).

1   Having reviewed the record, administrative transcript, parties' briefs, and the applicable

2   law, the Court finds as follows.

3   **I.    ANALYSIS**

4   **A.    RFC**

5   Plaintiff first challenges the ALJ's formulation of the following RFC:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform a full range of work at all
> exertional levels but with the following nonexertional limitations: simple, routine
> tasks with occasional interaction with supervisors, co-workers and the public, no
> collaborative work on a team; no production paced work (such as work on an
> assembly line or at a fast food restaurant during mealtimes) and can maintain her
> attention and concentration for 2 hour increments with normal breaks.

(A.R. 22).

Specifically at issue here, is the ALJ's formulation of the RFC after deeming "generally

persuasive" the opinion of Dr. Hamill, a psychological consultant, who examined Plaintiff and

concluded that she had some moderate mental limitations:

> Dr. Hamill offered the opinion the claimant has no impairment in her ability to
> perform simple and repetitive tasks; mild impairment in her ability to perform
> detailed and complex tasks. The claimant has no impairment in her ability to
> understand and accept instructions from supervisors but moderate impairment in
> her ability to interact with coworkers and the public due to a personality disorder.
> The claimant has mild impairment in her ability to perform work activities on a
> consistent basis without special or additional instructions. *The claimant has
> moderate impairment in her ability to maintain regular attendance and complete a
> normal workday or workweek without interruptions from a psychiatric condition.
> The claimant has moderate impairment in her ability to deal with the usual
> stressors encountered in the workplace due to the reasons listed above (Exhibit
> 4F).*

> Dr. Hamill's opinion is generally persuasive, but in order to better account for the
> claimant's mood swings, anger and irritability as well as some evidence of
> psychosis the limitations of occasional interaction with supervisors, coworkers and
> the public and no collaborative teamwork is warranted. Moreover, to better
> account for mood swing and irritability the limitation of concentration and
> attention in 2-hour increments is warranted.

(A.R. 26-27) (emphasis added).

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20

C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2,

2

§ 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ accepted, but failed to account for, moderate limitations in the opinion; "[s]pecifically, the ALJ harmfully erred by failing to account for Dr. Hamill's 'moderate impairment' in Ms. Garcia's ability 'to maintain regular attendance and complete a normal workday or workweek without interruptions from a psychiatric condition' and 'to deal with the usual stressors encountered in the workplace.'" (ECF No. 18, p. 19) (citing A.R. 527-528). Plaintiff notes that the RFC limited Plaintiff to simple, repetitive tasks, and added other limitations, like Plaintiff being able to maintain attention and concentration for 2 hour increments with normal breaks, but argues that such limitations do not account for the above moderate impairments. (ECF No. 18, p. 19).

Defendant "acknowledges that district courts that address this issue are not uniform, [but argues that] this Court should find that simple, routine tasks; occasional interaction with others; no collaborative work; no production based work; and two hours of attention and concentration before being allowed break, properly accommodates these limitations." (ECF No. 20, p. 9). Additionally, Defendant notes "that State agency medical consultants Patrice Solomon, Ph.D., and Hillary Weiss, Ph.D., had the chance to review Dr. Hamill's consultative examination report (AR 86, 106, 128, 146). . . . and determined that Plaintiff was only limited to simple routine tasks

1    with limited public contact (AR 95, 115, 135, 153)," which opinions the ALJ also deemed

2    generally persuasive. (*Id.* at 10).

3         Upon review, the Court concludes that Plaintiff has the more persuasive argument. As one

4    court has recently noted, there is a "split" on this issue but the caselaw "tends to favor the view

5    that a restriction to simple/routine tasks with limited public contact does not account for the

6    moderate limitations [of] . . . maintaining regular attendance[] and completing a normal

7    workweek without interruption." *Harrell v. Kijakazi*, No. 1:20-CV-00614-GSA, 2021 WL

8    4429416, at *6 (E.D. Cal. Sept. 27, 2021) (collecting cases); *see also Berenisia Madrigal v. Saul*,

9    No. 1:18-CV-01129-SKO, 2020 WL 58289, at *5 (E.D. Cal. Jan. 6, 2020) (concluding that

10   limitation to simple, routine tasks with limited peer and public contact did not account for

11   "moderate limitations completing a normal workday or work week due to her psychiatric

12   condition, moderate difficulties dealing with stress and changes encountered in the workplace,

13   and an up to moderate likelihood that she would emotionally deteriorate in a work environment").

14   This is because a limitation to simple and repetitive tasks addresses "concentration, attention,

15   persistence, or pace" but would not adequately account for "Plaintiff's ability to . . . maintain

16   regular attendance in the workplace and perform work activities on a consistent basis. . . ." *Donna*

17   *M. v. Saul*, No. 19-CV-03134-DMR, 2020 WL 6415601, at *4 (N.D. Cal. Nov. 2, 2020).

18        Similarly, the other limitations imposed relating to concentration, attention, persistence, or

19   pace, *e.g.*, Plaintiff being able to maintain her attention and concentration for 2 hour increments

20   with normal breaks, do not fully account for whether Plaintiff has the ability to regularly attend

21   work and complete a full day without interruptions for her psychiatric conditions and to deal with

22   the usual stressors in the workplace. *See Nanney v. Kijakazi*, No. 1:21-CV-00527-HBK, 2023 WL

23   8242052, at *5 (E.D. Cal. Nov. 28, 2023) ("The Court finds the RFC limiting Plaintiff to

24   understanding, remembering, and carrying out simple instructions, maintaining concentration,

25   persistence, and pace for 2-hour intervals, occasionally interacting with coworkers and the

26   general public, and adapting to simple workplace changes, does not account for Dr. Bonilla's

27   findings of moderate limitations in Plaintiff's ability to complete a normal workday/work week

28   and the likelihood of emotional deterioration."); *Lara v. Saul*, No. 2:19-CV-1527-EFB, 2020 WL

1    5603630, at *3 (E.D. Cal. Sept. 18, 2020) ("Nothing in the RFC adequately accounts for Dr.

2    Stenbeck's limitations regarding attendance or completion of a work day. To be sure, the RFC

3    does note that plaintiff only has the capacity to 'tolerate a low level of work pressure defined as

4    work with no multitasking or detailed job tasks,' but this limitation does not account for the

5    plaintiff's baseline problems with depression and coping.").

6          The ALJ had no duty to credit Dr. Hamill's opinion, but once the ALJ did, "the ALJ was

7    under an obligation to account for [the moderate limitations assessed] irrespective of the broader

8    reasoning in support of the RFC." *Harrell*, 2021 WL 4429416, at *4. Because the ALJ failed to

9    properly address Plaintiff's moderate limitations in maintaining attendance, completing a normal

10   workday or workweek without interruptions from a psychiatric condition, and dealing with usual

11   stressors, the RFC is not supported by substantial evidence.

12          **B.      Plaintiff's Subjective Complaints**

13         Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons to

14   reject her subjective complaints. (ECF No. 18, p. 20). Defendant argues that the ALJ's reasoning

15   was sufficient. (ECF No. 20, p. 4).

16         As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

17         Once the claimant produces medical evidence of an underlying impairment, the
           Commissioner may not discredit the claimant's testimony as to subjective
18         symptoms merely because they are unsupported by objective evidence. *Bunnell v.*
           *Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen*,
19         799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit
           excess pain testimony solely on the ground that it is not fully corroborated by
20         objective medical findings"). Unless there is affirmative evidence showing that the
           claimant is malingering, the Commissioner's reasons for rejecting the claimant's
21         testimony must be "clear and convincing." *Swenson v. Sullivan*, 876 F.2d 683, 687
           (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify
22         what testimony is not credible and what evidence undermines the claimant's
           complaints.
23

24   *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

25         However, "[t]he standard isn't whether [the] court is convinced, but instead whether the

26   ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th

27   489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective testimony "must be supported by

28

substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir.

1995); *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008)

("Accordingly, our next task is to determine whether the ALJ's adverse credibility finding of

Carmickle's testimony is supported by substantial evidence under the clear-and-convincing

standard.").

As to Plaintiff's subjective complaints, the ALJ concluded that Plaintiff's "medically

determinable impairments could reasonably be expected cause the alleged symptoms." (A.R. 23).

Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the

Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial

evidence, for not giving full weight to Plaintiff's symptom testimony.

Here, the ALJ summarized Plaintiff's subjective complaints as follows:

> The claimant alleges that daily outbursts, anger issues, depression and anxiety
> prevent her from working (Exhibits 5E; 2E). She has lived alone for 18 months.
> She relies on her mother's financial support as well as the Housing Authority. Her
> rent is $650.00 per month. The claimant alleges that she is in a program, but
> claimed that she did not know any details about the program or what type of
> benefit she receives. The claimant receives food stamps and Medi-Cal, but denied
> any cash aid. The claimant has a cell phone and her mother pays the monthly bill.
> She testified that she has a 9th grade education. The claimant stopped going to
> school because she had problems focusing. She was angry and did not know how
> to focus on her work. She did not want to be in school. The claimant denied a high
> school diploma. In 2015, she worked driving a van. She took patients to
> appointments and picked them up. The claimant said that she stopped working due
> to emotional issues. She got attached to the people she was driving. The claimant
> also worked as a part-time cashier The claimant testified that her emotional issues
> are what prevent her from working. The claimant admitted that in the past she
> loved to work. However, she does not like the feeling when she is working, and
> she feels paranoid thinking that people are watching her or criticizing her. This
> also affects her focus, and she is often angry or has crying spells. The claimant
> testified that she receives mental health treatment since February 2021. She sees a
> psychiatrist and counselor. She takes medication and does talk therapy. The
> claimant admitted that she's not always regular with her medication she testified
> that sometimes misses a day. When asked if she missed a few months, she said yes
> because she did not know what medication her doctor was prescribing. The
> medication didn't make her feel well. She told her doctor about the side effects and
> was told that this was normal. She went through medication adjustments after
> continuing to complain about the side effects. The claimant ended up changing
> doctors and got a new doctor who listens. The claimant admitted that at times she

failed to pick up her medication, providing multiple reasons including forgetfulness, or she was unaware that a medication delivery service was available or she did not want to burden her mother/parents. The claimant said that she is not able to care for herself and she's not always able to provide care for her animals as she forgets to feed them. She asks her mother to help care for her animals. She lives alone because she does not get alone with her stepfather. The claimant also distrusts her doctor because he was not giving her the medication that she needed. When asked about the inconsistencies in the record as to medication compliance the claimant became emotional and needed a break during the hearing.

(A.R. 22-23).

Thereafter, the ALJ provided an overview of the medical records, acknowledging a history of depression, anxiety, and mental health symptoms. (A.R. 23). Among other things, the ALJ noted that Plaintiff (1) reported difficulties getting along with others, including some of her family members, (2) had a history of drug use, (3) purported to have multiple personalities, (4) had a history of self-harm; and (5) reported feeling suicidal, tired, unable to focus, overwhelmed, and frustrated with everything. (A.R. 23-24).

The ALJ then summarized the reasons for discounting Plaintiff's subjective complaints as follows:

Despite her subjective symptoms and difficulties, however, the claimant was able to perform independent basic activities of daily living, including living alone, mostly caring for her animals, maintaining independent personal care with no problems, preparing simple meals, and carrying out some household chores. This is consistent with at most moderate difficulties understanding, remembering, or applying information, as well as the capacity to perform simple, routine tasks. The claimant was able to interact with at least one neighbor who described her as pleasant and happy (Exhibit 17E). The consultative psychologist noted she was generally cooperative, but somewhat dramatic (Exhibit 4F/3). The claimant interacts with her mother daily (Exhibit 18E).

In addition to the above range of activities of daily living, the claimant did not display any significant deficits with concentration during a psychological evaluation. The claimant was able to spell the word world forward and backward with ease. The claimant had some problems with calculations, but was able to perform serial threes and correctly identified six quarters in $1.50. The claimant's short term and long-term memory appeared intact (Exhibit 4F/4). The claimant was mostly able to respond appropriately to questions during the hearing and it was only when she was asked to explain the apparent inconsistencies that she began to cry and asked for a break. The record documents the claimant's meaningful activities as "hosting and doing karaoke." (Exhibit 1F/12). The claimant testified that she has a 9th grade education and stopped going to school

because she had problems focusing, she was angry and didn't know how to focus on her work. She did not want to be in school. However, she told her mental health provider that she dropped out of school in the 10th grade due to not being pushed to attend school. She stated that her parents should have pushed her more to go to school (Exhibit 1F/12). Although she stated that her mother takes care of everything for her, she still lives alone.

(A.R. 25-26).

The ALJ first discounted Plaintiff's subjective complaints because she "was able to perform independent basic activities of daily living, including living alone, mostly caring for her animals, maintaining independent personal care with no problems, preparing simple meals, and carrying out some household chores." (A.R. 25). Plaintiff argues that the ALJ failed to properly consider the full context of the evidence. (ECF No. 18, pp. 22-25). The Court agrees.

True, Plaintiff testified that she lived alone, but she otherwise indicated that she was reliant on others for her daily needs. (A.R. 44). For example, although the ALJ stated that Plaintiff mostly cared for her animals, Plaintiff testified that she could care for them "[a]t times" and when she did not have food for them she gave them some of her food from the table or asked her mother to bring her some food for them. (A.R. 55). This is consistent with the third-party function report filled out by Plaintiff's mother, in which she indicated that Plaintiff had two dogs that Plaintiff fed but that Plaintiff's mother made "sure they have food and water and also groom[s] them at times." (A.R. 290). Likewise, as to personal care, the ALJ characterized Plaintiff as having no problems, but Plaintiff testified that, at least at times, her mother helps her with personal hygiene, including reminders to shower and with basis hygiene needs. (A.R. 68-69). As to preparing simple meals, Plaintiff said that she had frozen foods that she could microwave but her mother "makes the hot meals most of the time." (A.R. 69). Notably, Plaintiff's mother stated that Plaintiff forgets to eat or says she is not hungry, does not cook like she used to, and rarely prepares meals, maybe three times a month. (A.R. 291). Lastly, as to household chores, Plaintiff stated that her mother came over and helped her sweep, did her laundry, did her dishes, and took out her trash. (A.R. 68). This is consistent with the report from Plaintiff's mother, stating that, while Plaintiff can do some activities on a good day, Plaintiff also ignores household chores. (A.R. 291-92). For example, Plaintiff's dishes will be piled up, there will be food on the stove,

1    and there will be trash everywhere, including outside. (A.R. 291-92). Because the ALJ materially

2    failed to characterize the record evidence, the ALJ's reliance on Plaintiff's daily activities is an

3    insufficient basis to discount her subjective complaints. *See Reddick v. Chater*, 157 F.3d 715, 722

4    (9th Cir. 1998) ("Our examination of the record shows that the ALJ has erred in characterizing

5    statements and documents contained therein to reach the conclusion that Claimant exaggerated

6    her symptoms.").

7         The ALJ next discounted Plaintiff's subjective complaints because she did not display any

8    significant deficits with concentration during a psychological evaluation. (A.R. 25). However, the

9    ALJ failed to explain, and the Court fails to see how, *e.g.*, Plaintiff's ability to spell the word

10   "world" forward and backwards and correctly identify six quarters making up $1.50 warrants

11   discounting the complaints at issue here, *e.g.*, that Plaintiff lacks the ability to consistently focus

12   for the demands of an entire work day, that she feels paranoid that people are watching or

13   criticizing her while she is working, and that she experiences strong feelings of anger and has

14   crying spells. (A.R. 22-23).

15        The Court notes that the ALJ interspersed notations throughout the opinion that could

16   reasonably be construed as additional reasons to discount Plaintiff's subjective testimony. The

17   ALJ noted that Plaintiff "testified that she has a 9th grade education and stopped going to

18   school because she had problems focusing, she was angry and didn't know how to focus on her

19   work . . . [but] she told her mental health provider that she dropped out of school in the 10th grade

20   due to not being pushed to attend school." (A.R. 25). To the extent that the ALJ suggested that

21   Plaintiff was being untruthful, the Court does not agree that this minor inconsistency about the

22   past justifies discounting Plaintiff's symptom testimony.  Additionally, the ALJ noted that

23   Plaintiff had some normal mental status exam findings, which could be taken to suggest that the

24   objective evidence did not support her testimony. (A.R. 24). However, such exams were still

25   often positive for the symptoms at issue here, *e.g.*, depression, anxiety, and irritability. (A.R. 24,

26   640, 652, 659, 672, 700, 710, 727).

27        Accordingly, the ALJ failed to provide clear and convincing reasons, supported by

28   substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

1

### C. Remedy

2      Plaintiff contends that "the Court should remand this case to SSA for the payment of

3 benefits based, in the alternative, the Court should remand this case for a new hearing." (ECF No.

4 18, p. 30). Defendant argues that, if this Court finds reversible error, a remand for further

5 proceedings is appropriate. (ECF No. 20, pp. 11-12).

6      The decision whether to remand for further proceedings or for immediate payment of

7 benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.

8 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test,

9 with each of the following parts of the test needing to be satisfied to remand for benefits:

10
11
12
> (1) the record has been fully developed and further administrative proceedings
> would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient
> reasons for rejecting evidence, whether claimant testimony or medical opinion;
> and (3) if the improperly discredited evidence were credited as true, the ALJ
> would be required to find the claimant disabled on remand.

13 *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). However, even if all these parts are met,

14 the Court may still remand when "an evaluation of the record as a whole creates serious doubt

15 that a claimant is, in fact, disabled." *Id.* at 1021. Notably, remand for further proceedings is the

16 "ordinary" requirement whereas a remand for payment of benefits is the rare exception. *See*

17 *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

18      Plaintiff offers no developed argument as to why an award of benefits is appropriate here,

19 and after review of the record as whole, the Court concludes that a remand for further proceedings

20 is warranted. First, further proceedings would be to account for the moderate limitations in

21 Plaintiff's mental abilities and to formulate an appropriate RFC. Second, the Court cannot say

22 that, had the ALJ properly credited Plaintiff's subjective complaints, *e.g.*, her inability to focus,

23 depression, anxiety, and emotional issues, that the ALJ would be required to find her disabled.

24 Notably, Plaintiff's subjective complaints were not posed in concrete limitations that were

25 considered by the vocational expert for determining whether Plaintiff was capable of work; thus,

26 it is unknown whether her complaints would render her disabled.

27 ///

28

## II.        CONCLUSION AND ORDER

Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further administrative proceedings consistent with this decision. Specifically, the ALJ is directed to account for Plaintiff's moderate limitations in maintaining attendance, completing a normal workday or workweek without interruptions from a psychiatric condition, and dealing with usual stressors, when formulating the RFC. Moreover, the ALJ is directed to properly evaluate Plaintiff's subjective complaints consistent with this opinion. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant.

IT IS SO ORDERED.

Dated:   __December 14, 2023__                /s/ _Erica P. Grosjean_
UNITED STATES MAGISTRATE JUDGE